IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BOARD OF COMMISSIONERS,**
**LUCAS COUNTY, OHIO,**          CASE NO. 3:23 CV 1764

    Plaintiff,

    v.                                       JUDGE JAMES R. KNEPP II

**RKKP 2 LLC, et al,**

                                                  MEMORANDUM OPINION AND
    Defendants.                              ORDER

### INTRODUCTION

Currently pending before the Court is Plaintiff Board of Commissioners, Lucas County, Ohio's motion to remand this case to the Lucas County Court of Common Pleas. (Doc. 6). Defendants RKKP 2 LLC, RKKP OVM2 LLC, OVML LLC, and 15 South Ontario LLC, opposed (Doc. 7), and Plaintiff replied (Doc. 8).

For the reasons discussed below, the Court grants the motion to remand.

### BACKGROUND

Plaintiff filed this lawsuit against Defendants in the Lucas County Court of Common Pleas. *See* Doc. 1, at 1-19. Defendants removed to this Court under 28 U.S.C. § 1446, asserting the Court has jurisdiction under 28 U.S.C. §1331.

Plaintiff's suit seeks to recover money paid by Plaintiff to Defendants pursuant to an American Rescue Plan Act ("ARPA") grant based on Defendants' alleged breach of contract and misuse and/or misappropriation of funds. *Id.* at ¶ 1. Plaintiff "seeks damages of $1,787,233.66 as well as interest, costs, and attorney fees from Defendants . . . declaratory and injunctive equitable relief . . . and an injunction enjoining Defendants to return $1,787,223.66". *Id.* at 3.

On March 11, 2021, Congress signed into law ARPA which appropriated Coronavirus Local Fiscal Recovery Fund payments from the U.S. Treasury to cities, non-entitlement units of local government, and counties. *Id*. Part of ARPA designated $350 billion to state and local governments in order to provide resources to their citizens. *Id.* at 4. Plaintiff received $83,200,000. *Id.* One eligible use of the ARPA funds was the development of affordable housing. *Id.* Defendants submitted a project proposal to Plaintiff seeking $2,000,000 in APRA funds to develop its Overmyer Lofts Project ("the Project") located at 15 South Ontario Street Toledo, Ohio 43604. *Id.* Once complete, the Project would include seventy-five residential units with six units reserved for households with incomes that are 80 percent or below the area median income. *Id.* at 4-5.

On or around September 15, 2022, Plaintiff and Defendants entered into a subgrant agreement (the "Agreement") whereby Plaintiff agreed to provide Defendants $2,000,000 in ARPA funds to offset "predevelopment and soft costs" related to the Project. *Id.* at ¶ 17. Plaintiff alleges Defendants told it they anticipated the Project would incur a total of $3.8 million in predevelopment costs and construction period soft costs. *Id.*[1] The Agreement provided any ARPA funds would have to be used during the statute's eligibility period – from March 3, 2021, to December 31, 2024. *Id.* at ¶ 19.

The Complaint alleges that under the terms of the Agreement, Defendants agreed to "carry out the Project materially in the form and phasing as set forth in the Project Proposal"; to "ensure that the Project is performed in a manner that is consistent with applicable federal, state, and local laws and regulations"; and that Plaintiff "shall have the right to refuse payment of the Subgrant

---

1. The Complaint distinguishes "soft" and "hard" costs; "soft" costs are incurred in the "predevelopment" stage, such as acquisition of title, removal and remediation of environmental hazards, demolition and deconstruction of the property, and inspection fees and other administrative costs. (Doc. 1 at ¶ 18).

2

under this Agreement for any lawful reason". *Id.* at ¶¶ 20-21. Furthermore, Plaintiff alleges Defendants agreed to comply with "Contract Provisions for Non-Federal Entity Contract under Federal Award" . . . including federal procurement provisions set forth in 2 CFR Part 200 relating to conflicts of interest, competitive bidding, record keeping, reporting, monitoring and tracking requirements." *Id.* at ¶ 22. Defendants also agreed to comply with "the U.S. Treasury Office of Inspector General implementation rules and regulations." *Id.* at ¶ 23. Defendants agreed that "if at any time by audit or other review, it was determined that any part of [Defendants'] Project cost [are] not eligible for reimbursement, [Defendants] agree[] to immediately repay the ineligible portion to [Plaintiff]. *Id.* at ¶ 24. Lastly, Defendants agreed that the Project would be subject to Ohio Prevailing Wage Laws. *Id.* at ¶ 25.

After execution of the Agreement, Defendants told Plaintiff most of the $3.8 million in predevelopment costs and soft costs they initially represented had been incurred prior to the initial ARPA eligibility date of March 3, 2021. *Id.* at ¶ 27. Defendants informed Plaintiff they could not exhaust the full $2,000,000 initially designated to them under the Agreement. *Id.* at ¶ 28. Defendants asked Plaintiff to modify the Agreement so that funds could be spent on hard costs of construction of the Project and to waive federal procurement processes. *Id.* Furthermore, the parties expressed the acceptance of the "First Amendment would be conditioned upon [Defendant] executing a Project Labor Agreement ("PLA") with the Northwestern Ohio Building and Construction Trades Council and its affiliated unions." *Id.* at ¶ 29. Plaintiff alleges Defendants did not meet the terms of the First Amendment, so Plaintiff refused to execute the First Amendment; instead, it believes the original Agreement remains in full effect. *Id.* at ¶ 30. On April 20, 2023, Plaintiff allegedly gave Defendants fifteen days to execute the PLA requirement. *Id.* at

3

¶ 31. On May 10, 2023, Defendants told Plaintiff they would not enter into the PLA and would rely on the original Agreement. *Id.* at ¶ 32.

Plaintiff filed this lawsuit and alleged Defendants breached the Agreement by:

i. failing or refusing to competitively bid Project contracts under federal and state laws, using a qualifications-based competitive proposal selection procedure, to procure intended architectural and engineering services;

ii. failing or refusing to ensure that contractors and subcontractors are paid prevailing wage rates;

iii. failing or refusing to comply with reporting, monitoring, and tracking requirements;

iv. failing or refusing to return the ARPA Subgrant funds upon demand of the Board once it became apparent that [Defendants] could not spend the ARPA Subgrant funds on eligible "predevelopment and soft costs" incurred during the statutory eligibility period contrary to §2.10 of the Agreement.

*Id.* at ¶ 39.

## STANDARD OF REVIEW

When a defendant removes an action from state court to federal court, the federal court has subject-matter jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Here, Defendants claim this matter falls within the Court's original federal question jurisdiction under 28 U.S.C. § 1331. (*See* Doc. 1, at 1-4). District courts have original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Absent diversity of citizenship, federal-question jurisdiction is required" for original jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[The well-pleaded complaint] rule provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (quoting *Caterpillar*, 482 U.S. at 392). The party seeking removal jurisdiction bears the burden of stating facts in its notice of removal demonstrating an entitlement to removal

4

jurisdiction. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). "'[T]he 'arising under' gateway into federal court in fact has two distinct portals': 1) 'litigants whose causes of action are created by federal law,' and 2) 'state-law claims that implicate significant federal issues.'" *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012) (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)). Finally, all doubts as to the propriety of removal are resolved in favor of remand. *Casias*, 695 F.3d at 433; *see also First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 464 (6th Cir. 2002) (removal statutes are to be narrowly construed as they were "adopted in order to restrict rather than expand the scope of removal from the state courts.").

## DISCUSSION

Plaintiff moves to remand on grounds that the Complaint neither alleges a federal question nor meets the substantial federal question doctrine; instead, it argues, the dispute is a state law breach of contract claim. (Doc. 6, at 6). Defendants contend Plaintiff's Complaint meets the federal question jurisdiction requirement due to the Complaint's significant references to federal law. (Doc. 7, at 6). Additionally, Defendants argue the Court has jurisdiction under the substantial federal question doctrine as Plaintiff's claims turn on substantial questions of federal law. *Id.* at 8. Lastly, Plaintiff asks this Court to award attorney fees because Defendants lacked an objective reasonable basis for removal, and instead the removal attempt was merely a tool to "delay repayment and continue to misuse funds". (Doc. 6, at 13). Defendants assert removal was objectively reasonable based on the averments in the Complaint and ask the Court to not award attorney fees if it determines remand is appropriate. (Doc. 7, at 12).

For the reasons set forth below, the Court finds remand is required but declines to award attorney fees.

5

Well-Pleaded Complaint Rule

Defendants argue removal was proper under the well-pleaded complaint rule because Plaintiff's Complaint "raised federal question jurisdiction with the averments that the Defendants (i) violated the ARPA statute and Federal Procurement Law, and (ii) imperiled [Plaintiff's] compliance with the U.S. Treasury's reporting requirements." (Doc. 7, at 8). Additionally, Defendants assert the Agreement contains a clause stating it is to be construed in accordance with the laws of the United States. *Id.* Plaintiff responds that the Complaint only alleges state law claims of breach of contract, declaratory judgement, and injunctive relief, none of which arise from any federal statute. (Doc. 6, at 9). Moreover, Plaintiff points out ARPA does not provide for a private right of action. *Id.* at 10.

Pursuant to § 1441(a), "[a] civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). A federal court has original jurisdiction over a federal question when the civil action "arises under" the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Under the "well-pleaded complaint" rule, for a state-law claim to create federal-question jurisdiction, a federal question must appear on the face of the plaintiff's complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also K.B. ex. rel. Qassis v. Methodist Healthcare-Memphis Hosp.*, 929 F.3d 795, 799 (6th Cir. 2019) ("To determine whether a plaintiff's case arises under federal law, federal courts look at the face of the plaintiff's 'well-pleaded complaint.'") (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). "Under this rule, a federal question must appear on the face of the complaint rather than as part of a defense, even if a federal-law defense is anticipated." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). The plaintiff is the master of his claim and may avoid federal jurisdiction by relying exclusively on

state law. *Beneficial Nat'l Bank*, 539 U.S. at 12, (citing *Caterpillar*, 482 U.S. at 392). Courts have allowed three exceptions to the "well-pleaded complaint" that confer federal question jurisdiction, when a federal cause of action is not evident on the face of the complaint: (1) artful-pleading doctrine, (2) complete preemption doctrine, and (3) substantial-federal-question doctrine. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc). The only exception raised here is the substantial federal question doctrine.

"[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). To determine whether a private cause of action exists, we must begin with the text of the statute. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). The cause of action may be express, *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018), or implied, *California v. Sierra Club*, 451 U.S. 287, 292–93 (1981). Here, Defendants have not pointed to any federal cause of action alleged in the Complaint. For that reason, Defendants must rely on the substantial federal question doctrine to invoke federal question jurisdiction.[2]

Substantial Federal Question Doctrine

Defendants assert Plaintiff's breach of contract claim turns on substantial questions of federal law. (Doc. 7, at 8). Plaintiff responds any federal law or regulations referenced in the Complaint are not substantial because it can prove its breach of contract claim without relying upon ARPA or the other federal regulations in its Complaint. (Doc. 6, at 12).

---

2. "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal. Such jurisdiction remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007).

State laws that implicate a "substantial question of federal law" also open the door into federal court. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). A substantial question of federal law exists where "(1) 'a state-law claim necessarily raise[s] a stated federal issue,' (2) that is 'actually disputed and substantial,' (3) 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018) (quoting *Grable*, 545 U.S. at 314). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. The Supreme Court described this pathway to federal court as a "slim category," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), and the Sixth Circuit emphasizes that it is to be read narrowly, *Mikulski*, 501 F.3d at 568. A state law cause of action may arise under federal law where "'the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Merrell Dow*, 478 U.S. at 808 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

In *Grable*, the Supreme Court held that a state title action implicated a substantial question of federal law because it required the interpretation of the federal tax code. *Grable*, 545 U.S. at 314–15. The resolution of that issue depended entirely on the interpretation of the federal provision. *Id.* at 315. The Court held the question was substantial because the Internal Revenue Service "has a strong interest in the prompt and certain collection of delinquent taxes" and a direct interest in vindication via a federal forum. *Id.* (citation omitted). The Court also held federal judges have more experience in federal tax matters. *Id.* Lastly, the Court reasoned that allowing federal

8

courts to hear disputes over federal tax provisions would only have a "microscopic impact on the federal-state division of labor". *Id.*

Here, the Court first must examine whether the state law claims have raised a disputed federal issue. Defendants argue removal meets the first prong under *Grable* because it necessarily "turns on whether Defendants (i) violated the ARPA statute eligibility period, (ii) maintained compliance with Federal Procurement Law, and (iii) whether the Defendants purported misuse and/or appropriation imperiled the Plaintiff's compliance with the U.S. Treasury's compliance reporting requirements." (Doc. 7, at 9-10). Plaintiff concedes federal law is referenced in the Complaint; however, it argues, it can "prove its breach of contract claim without relying upon ARPA or any of the federal regulations set forth in its Complaint." (Doc. 6, at 12).

Defendants have failed to establish Plaintiff's state law claim "necessarily raises" a federal issue because Plaintiff's claims can be proven without relying on the federal regulations. A reference to federal law as part of a statement of a state-law claim "is not a necessary element of the claim" if it is not the "only" route by which a plaintiff can prevail on that claim. *Fried v. Sanders*, 783 F. App'x 532, 536 (6th Cir. 2019). Plaintiff alleges it can prove Defendants breached the contract based on the Agreement's requirement that Defendants:

i. comply with the State of Ohio's prevailing wage statutes by executing a Project Labor Agreement ("PLA") with the Northwestern Ohio Building and Construction Trades Council and its affiliated unions regarding the 15 South Ontario Street renovation project;

ii. competitively bid project contracts for the renovation project; and

iii. return the ARPA Subgrant funds upon demand of the Board once it became apparent that they could not spend the ARPA Subgrant funds on eligible "predevelopment and soft costs."

(Doc. 1 at ¶¶ 25-34, 39).

Because Plaintiff can prove its breach of contract claim without relying on federal law, Defendants have not met the burden under the first *Grable* prong.

Next, the Court examines "the importance of the issue to the federal system as a whole," *Gunn v. Minton*, 568 U.S. 251, 260 (2013). Defendants argue the federal interest is substantial.

To determine substantiality, courts should consider "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570. These factors are to be examined collectively and in light of the issues presented in each case—meaning that "no single factor is dispositive." *Id.*

The Court will apply the four factors above. First, there is no federal agency directly involved here. Defendants correctly note the United States Treasury oversees ARPA; however, the dispute here is over a contract between a municipality and private entity. The first factor is both objective and apparent. *See Empire*, 547 U.S. at 700 ("The dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute[.]"). Second, Defendants argue the alleged non-compliance with ARPA is "important because it concerns funds that are to be used to remediate housing crisis issues caused by the Covid-19 Pandemic". (Doc. 7, at 10). Defendants' argument misses the mark. ARPA is undoubtedly an important piece of legislation, but that is not the question here. Rather, Defendants must explain what federal question must be answered under ARPA or any federal regulation in Plaintiff's Complaint such that this Court should find that an important federal question exists. *See Mikulski*, 501 F.3d at 579 (holding

that "[w]hile the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection.").

In determining the substantiality element, courts look at whether a federal private right of action exists. *Eastman*, 438 F.3d at 552 ("Congress' withholding a private right of action from [a] statute[ ] is an important signal to its view of the substantiality of the federal question involved."). ARPA does not confer a private right of action. *See* 42 U.S.C. § 802 *et seq*. Furthermore, many courts have held that a dispute over the award of federal funds does not alone mean a substantial federal question is presented. *See, e.g.*, *Scott v. Gate Gourmet, Inc.*, 2021 WL 677897, at *6 (C.D. Cal.) (no substantial federal question where claims did not "arise from the disbursement of the federal funds or appear to require an interpretation of the legality of the [federal] government's disbursement of funds pursuant to the CARES Act"); *Young v. AmeriHome Mortg. Co., LLC*, 2022 WL 3371341, at *3 (S.D. Cal.) (although the CARES Act itself is important to the federal government, "[t]he success of Covid-19 relief efforts will not rise or fall based on the interpretation of this one statutory section"); *Vermont v. McGrx, Inc.*, 2010 WL 3767794, at *7 (D. Vt.) (state contract claim premised on violation of federal Medicaid laws where federal funds are approximately 60% of the state Medicaid's budget did not present substantial federal question); *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 585 (E.D. Pa. 2007) (federal Medicaid funding "does not, without more, confer federal jurisdiction"); *Ohio v. Jones*, 2012 WL 2412153, at *4 (N.D. Ohio) ("Congress delegated the administration and implementation of Medicaid to the states. That delegation, coupled with the fact that Congress did not provide for a private federal right to action, shows it intended litigation over the Estate Recovery provisions of Medicaid to be conducted at the state level.").

11

Third, a decision on whether Defendants violated ARPA, or any federal regulation would not be enough to resolve the individual claims. Plaintiff could still conceivably prove its breach of contract claim under state law. In other words, if this Court heard the case, it will not be necessarily required to resolve any predominant issue of federal law to reach an outcome. Fourth, the instant case is highly fact specific and does not "present[ ] a nearly pure issue of law, the resolution of which would establish a rule applicable to numerous [subsequent cases]." *Empire*, 547 U.S. at 681. Defendants have failed to satisfy the second *Grable* prong.

Finally, the Court finds the fourth sub-factor weighs in favor of remand. If this Court were to take the case at bar, it would disrupt the "balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The lack of a federal private right of action under ARPA further supports the conclusion that a state court, not a federal court, should hear the case. *Eastman*, 438 F.3d at 552 ("Congress' withholding a private right of action from [a] statute[ ] is an important signal to its view of the substantiality of the federal question involved.").The issues in this Complaint fall squarely within the state court's responsibilities of applying Ohio common law and statutory law.

Having found neither a federal cause of action nor a substantial federal issue, the Court concludes that Plaintiff's Complaint "does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow*, 478 U.S. at 817 (quoting 28 U.S.C. § 1331). As such, remand is required.

<u>Attorney Fees</u>

Plaintiff requests an award of attorney fees associated with the removal attempt. It argues the removal was not objectively reasonable because the Complaint does not contain any federal claims or regulations that would give this Court jurisdiction. (Doc. 6, at 13). Defendants respond,

"[t]he removal is objectively reasonable due to the averments contained in the [Plaintiff]'s Complaint". (Doc. 7, at 11-12).

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Conversely, when an objectively reasonable basis exists, fees should be denied."); *see also Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 913 (6th Cir. 2007) (award of attorney fees is inappropriate where defendant's attempted removal was "fairly supportable") (internal quotation omitted). The non-removing party has the burden to "establish that the . . . removal attempt was not objectively reasonable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008).

Upon review, given the Supreme Court's recognition of substantial-question jurisdiction in *Grable*, the logical underpinnings of Defendants' arguments related to ARPA and references to federal law, and the lack of on-point binding precedent, the Court cannot conclude that Defendants lacked an objectively reasonable basis for seeking removal and thus denies Plaintiff's request for attorney fees.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion to Remand (Doc. 6) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that this case be, and the same hereby is, REMANDED to the Lucas County Court of Common Pleas; and it is

FURTHER ORDERED that Plaintiff's request for attorneys' fees and costs, be and the same hereby is DENIED.

     s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE